UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ROBERT SHEPLER,

                    Plaintiff,             13 Civ. 7192 (RWS)

    -against-                        OPINION

METRO-NORTH COMMUTER RAILROAD,

                    Defendant.

------------------------------------X

A P P E A R A N C E S:

       Attorneys for the Plaintiff

       FYLNN & WIETZKE, P.C.
       1205 Franklin Avenue
       Garden City, NY 11530
       By:  Marc Twyman Wietzke, Esq.

       Attorneys for the Defendant

       METRO-NORTH RAILROAD
       347 Madison Avenue, 19th Floor
       New York, NY 10017
       By:  Ioana Wenchell, Esq.
            Jesse Andrew Raye, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/15

**Sweet, D.J.,**

Defendant Metro-North Commuter Railroad ("Metro-North" or the "Defendant") has moved the Court for summary judgment pursuant to Fed. R. Civ. P. 56, seeking dismissal of the Complaint filed by Robert Shepler ("Shepler" or the "Plaintiff"). For the reasons set forth below, the motion for summary judgment is denied.

## Prior Proceedings

This is a negligence action in which Shepler alleges that he sustained lower back injuries when he slipped on a piece of broken concrete at the site where he worked for Metro-North. Although this is a tort-based case between a New York plaintiff and a New York defendant, it finds itself in federal court due to the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., which provides the exclusive remedy for injured employees of railroads engaged in interstate commerce seeking to sue their employers. See N.Y. Cent. R.R. Co. v. Winfield, 244 U.S. 147, 149 (1917); Howell v. BNSF Ry. Co., No. 14 C 9977, 2015 WL 3528237, at *2 (N.D. Ill. June 4, 2015).

This is the first major motion in the case. Shepler filed his Complaint on October 11, 2013 (Dkt. No. 1). The instant

motion for summary judgment was filed on October 20, 2014 (Dkt. Nos. 12-16).  After several extensions, during which discovery continued, Shepler filed his opposition papers on May 20 and 21, 2015 (Dkt. Nos. 35-38).  Metro-North filed its reply on June 5 (Dkt. No. 40-41), and the motion was heard on submission on June 17.  (Dkt. No. 34).

**The Facts**

The facts are set forth in the parties' Local Rule 56.1 Statements of Fact (Dkt. Nos. 11, 38, & 40), and are not in dispute except as noted below.

Metro-North is a major commuter rail system operating in New York, New Jersey, and Connecticut.  Shepler began working for Metro-North in 1996, and at the time of the accident he was employed as a carman, fixing trains at Building 4 of Metro-North's Croton-Harmon Locomotive and Coach Shop.  On the day of the incident in question he was heading into his start-of-shift meeting when he decided to get a radio from his locker.  As he bent down to go under the rail of Track 25, his foot slipped on a patch of broken concrete and he felt a sharp pain in his back. He tried to keep walking but then sat down to recuperate, calling John Egger ("Egger"), the EMT on duty that day.  Egger found Shepler sitting in a bent position on a bench directly

across from where the incident occurred, claiming that he had slipped and felt his back pop. Egger noted that there was broken concrete at the site where the accident occurred.

Brian Jacques, a General Foreman at Metro-North, took photographs of the scene on the day Shepler was hurt. Matthew DePasquale, a Senior Construction Engineer who had helped construct the building at which the incident occurred, took a look at the pictures and noted that they showed spalling, an isolated failure of a concrete surface, and delamination, a condition where the surface of a piece of concrete separates from the concrete below.

Both sides have retained experts to look into the issue. Shepler's expert, Andrew Yarmus, opined that the slip area was covered with small chips of concrete and concrete dust, which reduced the coefficient of friction under Shepler's foot, and that nationally accepted standards would require an owner of a workspace in that condition to repair it. Yarmus also stated that based on records he had reviewed, Metro-North was aware of the situation and that the failure to clean or stabilize the area was the cause of Shepler's injury. Yarmus stated that the condition he observed at the site does not develop instantly or without warning, but rather over a period of time, usually months.

Metro-North's expert, Joseph Cannizzo, concluded that the area of Shepler's slip had a resistance to sliding that was greater than both national standards and that of the surrounding area. He stated that the condition of the surface was caused by localized internal pressures within the concrete, making it virtually impossible to predict when and where it would occur, and that the area was not unsafe according to national standards. In a supplemental report, Canizzo concluded that the degraded condition of the area actually increased the slip resistance between the surface and Shepler's shoe, and therefore was not a proximate cause of his injury. Cannizzo describes the condition of the slip area as scaling, a relatively thin flaking-off of the upper surface of concrete consisting of mostly water and sand, rather than spalling or delamination. Cannizzo also stated that there is no way to tell when the area of disturbed concrete occurred, but that it would usually occur suddenly, and that no problems would be visible beforehand.

**Applicable Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The
relevant inquiry on application for summary judgment is "whether
the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one
party must prevail as a matter of law."  Id. at 251–52.  A court
is not charged with weighing the evidence and determining its
truth, but with determining whether there is a genuine issue for
trial.  Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735
F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S.
at 249).

Cases brought under FELA are subject to a lower standard of
proof than common-law tort suits, a consequence of Congress'
dissatisfaction with the manner in which common-law affirmative
defenses could deprive an injured plaintiff of his ability to
recover.  Rogers v. Mo. Pac. Ry. Co., 352 U.S. 500, 507-08
(1957).  According to the Rogers Court, "for practical purposes
the inquiry in these cases today rarely presents more than the
single question whether negligence of the employer played any
part, however small, in the injury or death which is the subject
of the suit.  The burden of the employee is met, and the
obligation for the employer to pay damages arises, when there is
proof, even though entirely circumstantial, from which the jury
may with reason make that inference."  Id. at 508 (footnotes

omitted). A defendant seeking summary judgment against a FELA claim has a difficult burden since "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any* part, *even the slightest*, in producing the injury or death for which damages are sought." Syverson v. Consol. Rail Corp., 19 F.3d 824, 826 (2d Cir. 1994) (emphasis in the original).

**The Motion for Summary Judgment is Denied**

Metro-North's briefing cites a wide variety of authorities, most of which are from outside of this circuit, state, or district, to raise essentially four arguments against Shepler's claim. First, Metro-North argues that Shepler has not shown a "probable" or "likely" causal relationship between Metro-North's negligence and his injuries, as opposed to a merely possible one. Second, Metro-North argues that there is insufficient evidence that it knew of or could have foreseen the dangerous condition. Third, it argues that even with the degraded concrete surface, the conditions at Building 4 were nonetheless reasonably safe. And fourth, it argues that Shepler's expert's conclusions are unscientific and vague, and therefore should not be credited.

The Supreme Court's FELA jurisprudence establishes that, far from needing to demonstrate a "probable" or "likely" causal relationship to survive summary judgment, the FELA plaintiff need only establish that "the proofs justify with reason the conclusion that employer negligence played any part in producing the injury. It does not matter that, from the evidence, the jury may also with reason, on the grounds of probability, attribute the result to other causes." Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 116 (1963) (quoting Rogers, 352 US. at 506-07)). In other words, a FELA case can survive summary judgment so long as a reasonable juror could believe that employer negligence caused the plaintiff's injury, even if another result is more "probable" or "likely." This standard has not been altered over all the decades since it was announced. Ramsay v. Nat'l R.R. Passenger Corp., No. 12 Civ. 1999, 2015 WL 2168062, at *5 (S.D.N.Y. May 7, 2015). In this case, photos and eyewitness testimony indicate, and the parties do not dispute, that the concrete in the area where Shepler slipped was in some way degraded. While the experts disagree on whether the degradation made the surface more or less slippery, a rational jury could find that the degradation led to Shepler's slip, and that the slip led to Shepler's injury.

On the question of whether Metro-North knew or should have known of the degraded concrete, "reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence," Gallick, 372 U.S. at 117, but the question is also a factual issue, and therefore "the right of the jury to pass on this issue must be liberally construed." Syverson, 19 F. 3d at 826. In the instant case, Brian Jacques, Shepler's supervisor, testified that Shepler's choice to travel under the rail at Track 25 was a common one for workers, and that he himself had done so. Photographs taken at the time of the incident show that the concrete was visibly degraded. While the parties' experts differ on whether the degradation occurred suddenly or slowly, the existence of the visibly dangerous condition, combined with the Defendant's knowledge that the area was decently well-traveled, is enough for the question of foreseeability to be one for the jury. See Sinclair v. Long Island. R.R., 985 F.2d 74, 77 (2d Cir. 1993) (finding that where a trip-and-fall plaintiff introduced photographs of a bent trap door taken shortly after the accident, "a jury could reasonably infer from them that the condition had existed long enough to impart constructive, if not actual, notice of the defect.").

As to Metro-North's argument that summary judgment is warranted because Building 4 was a reasonably safe workspace, as

its own briefing acknowledges, the conclusion is only possible
if the finder of fact credits Metro-North's expert and rejects
Shepler's. (See Metro-North Br., Dkt. No. 15, at 8.)  Since the
facts necessary to the decision are in genuine dispute and a
rational jury could credit Shepler's expert, summary judgment is
inappropriate.

        Lastly, Metro-North suggests that the report of Shepler's
expert, Andrew Yarmus, should be excluded for failing to meet
the requirements of Federal Rule of Evidence 702.  As an initial
note, this argument was raised for the first time in Metro-
North's reply pepers, and therefore need not be considered.  Cf.
Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 252 (2d Cir.
2005).  But even when weighed on its merits, Metro-North's
argument against Yarmus' testimony fails.  Its brief raises two
objections to Yarmus' testimony; first, that his conclusions are
"based upon a review of pictures and statements by others
without any personal observation of the actual place of the
accident," and second, that Yarmus indicated at his deposition
that there was a possibility that the degraded concrete had
occurred quickly, perhaps in as little as 24 hours.  (Metro-
North Reply Br., Dkt. No. 41, at 5-6.)  The former objection
holds no water because the Federal Rules do not require expert
testimony to be based on personal observation; rather, it may

rely on "facts or data in the case that the expert has been made
aware of or personally observed." Fed. R. Evid. 703 (emphasis
added). "The expert need not have conducted [his or] her own
tests." Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 94-95
(2d Cir. 2000). As to Yarmus' acknowledgement of the
possibility that the degraded concrete arose quickly, there is
no Federal Rule of Evidence barring the admission of expert
testimony that acknowledges a quantum of doubt. Instead,
federal courts allow experts to offer testimony that is less
than entirely certain, trusting in opposing counsel's ability to
highlight any weaknesses in the proffered testimony and the
jury's ability to determine its ultimate worth. See U.S. v.
Moran, 413 F.3d 372, 381 (3d Cir. 2005) (concluding that Federal
Rule of Evidence 702 does not require "a reasonable degree of
scientific certainty" and discussing how experts may give
opinions "in terms of probabilities rather than certainties").
Indeed, the report of Metro-North's own expert acknowledges a
certain amount of room for doubt. (See Preliminary Report of
Joseph C. Cannizzo, Dkt. No. 40 Ex. A, at 5 (making findings
"[w]ithin the bounds of reasonable engineering certainty").)

     The primacy of a jury in determining issues of fact is
"[a]n essential, distinctive feature of FELA." Ramsay, 2015 WL
2168062, at *5. "To deprive [FELA plaintiffs] of the benefit of

a jury trial in close or doubtful cases is to take away a goodly portion of the relief which congress has afforded them under the statute." O'Connell v. Nat'l R. Passenger Corp., 922 F.2d 1039, 1042 (2d Cir. 1991) (quoting Bailey v. Cent. Vt. Ry., 319 U.S. 350, 354 (1943)).  Metro-North may or may not have been negligent, and Shepler may or may not have been injured because of it, but under FELA's relaxed standard the matter should be decided by a jury rather than by the Court on summary judgment.

## Conclusion

For the reasons stated above, Metro-North's motion for summary judgment is denied.

It is so ordered.

New York, NY
September 25 2015

ROBERT W. SWEET
U.S.D.J.