UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ROBERT SHEPLER,

               Plaintiff,

   - against -

METRO-NORTH COMMUTER RAILROAD,

               Defendant.
----------------------------------------X

13 Civ. 7192 (RWS)

O P I N I O N

A P P E A R A N C E S:

       Attorneys for the Plaintiff

       FYLNN & WIETZKE, P.C.
       1205 Franklin Avenue
       Garden City, NY 11530
       By:  Marc Twyman Wietzke, Esq.

       Attorneys for the Defendant

       METRO-NORTH RAILROAD
       347 Madison Avenue, 19th Floor
       New York, NY 10017
       By:  Ioana Wenchell, Esq.
            Jesse Andrew Raye, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/15/16

1

**Sweet, D.J.**

Defendant Metro-North Railroad requests that this Court:

1.    Preclude Plaintiff's medical experts from testifying that the accident at issue in this action caused Plaintiff to be disabled from his work;

2.    Preclude any evidence regarding Plaintiff's gross wage loss on relevance grounds;

3.    Preclude any reference to the financial hardship that Plaintiff or his family suffered as a result of the injury at issue in this action;

4.    Preclude any reference to Plaintiff's family members or their medical conditions;

5.    Preclude any reference to Plaintiff as a good or safe employee;

6.    Preclude any evidence that the Defendant could have provided safer procedures or methods of work;

7.    Allow evidence regarding Railroad Retirement

2

benefits that Defendant paid Plaintiff concerning the issue of Plaintiff's failure to mitigate damages;

8.   Allow evidence regarding Plaintiff's receipt of Railroad Retirement benefits.

For the reasons set out below, Defendant's motion is granted in part and denied in part.

## I.   Prior Proceedings

This is a negligence action in which Plaintiff, Robert Shepler, alleges that he sustained lower back injuries when he slipped on a piece of broken concrete at the site where he worked for Defendant, Metro-North Railroad.  This Court has federal jurisdiction over the tort-based claim under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, which provides the exclusive remedy for injured employees of railroads engaged in interstate commerce seeking to sue their employers.  See N.Y. Cent. R.R. Co. v. Winfield, 244 U.S. 147, 149 (1917); Howell v. BNSF Ry. Co., No. 14 C 9977, 2015 WL 3528237, at *2 (N.D. Ill. June 4, 2015).

3

On September 25, 2015, this Court denied Defendant's motion for summary judgment (Dkt. No. 42). Defendant filed the instant *in limine* motion on March 7, 2016 (Dkt. No. 63). The Court heard oral argument on the motion on April 8, 2016 (Dkt. No. 76), at which point the motion was deemed fully submitted.

In addition to the *in limine* motion, the parties submitted separate briefing on a separate, but related issue. On February 10, 2016 Plaintiff served an amended notice to take a *de bene esse* deposition of Dr. Kirkpatrick on April 13, 2016 at 5:30PM at his office in Queensbury, NY. Defendant objected to the notice on February 26, 2016 through a letter motion requesting an order preventing Plaintiff from taking Dr. Kirkpatrick's deposition (Dkt. No. 59). The Court heard oral argument on the letter motion on April 8, 2016, at which point the motion was deemed fully submitted.

The action is set for trial on April 25, 2016.

4

## II.   The *In Limine* Motions

### 1.   Admissibility and Scope of Physician Testimony

#### A.   Treating Physician Testimony Regarding Causation Will Be Permitted

This motion asks the Court whether certain physicians may testify to their medical observations, opinions, and ultimate conclusions about causation despite having not submitted expert reports pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). The questions for the Court are: (1) whether these physicians are retained expert witnesses requiring a report; and (2) the appropriate scope of their testimony.

The general rule is that treating physicians are fact witnesses or non-retained experts, whereas doctors "retained for purposes of trial" who form their opinions based on "knowledge acquired or developed in anticipation of litigation or for trial" are expert witnesses requiring an expert report. <u>Mangla v. University of Rochester</u>, 168 F.R.D. 137, 139 (W.D.N.Y. 1996).

Here, there are three physicians at issue: Dr. Lawrence, Dr. Iqbal, and Dr. Kirkpatrick. Dr. Lawrence and Dr. Iqbal are both the Plaintiff's treating physicians, and it is undisputed that they were listed in Plaintiff's Rule 26(a)(2)(A)

disclosures. Defendant argues that none of the physicians may testify as to causation, which would be opinion testimony, since the physicians have not been properly designated as experts nor have they drafted required expert reports.

However, "treating physicians, like all other fact witnesses, may give opinion testimony about plaintiff's condition." Reilly v. Revlon, Inc., 08 Civ. 205(CM)(MHD), 2009 WL 2900252, at *3 (S.D.N.Y. Sept. 9, 2009). In fact, a treating physician "may express his opinions about the plaintiff's condition and prognosis." Monroe-Trice v. Unum Employee Short-Term Disability Plan, No. 00-CV-6238 (JGK) (MHD), 2003 WL 68033, at *2 (S.D.N.Y. Jan. 8, 2003). Further, even testimony as to causation can be permissible. Byrne v. Gracious Living Industries, Inc., No. 01 Civ. 10153(LAK), 2003 WL 446474, at *2 (S.D.N.Y. Feb. 25, 2003) (citing Sprague v. Liberty Mutual Insurance Co., 177 F.R.D. 78 (D.N.H. 1998); but see Widhelm v. Wal-Mart Stores, Inc., 162 F.R.D. 591, 593 (D.Neb. 1995); Thomas v. Consolidated Rail Corp., 169 F.R.D. 1, 2 (D.Mass. 1996)).

Dr. Lawrence and Dr. Iqbal are treating physicians and were not retained for the purpose of this litigation. Therefore, they were not required to submit an expert report and they will be permitted to testify to permissible subjects.

6

The limitation on a treating physician's testimony is that it must be "based on the physician[']s personal knowledge of the examination, diagnosis and treatment of a patient and not from information acquired from outside sources." Mangla v. University of Rochester, 168 F.R.D. at 139.

With respect to the scope of their testimony, the treating physicians will be permitted to testify to their medical opinions about the Plaintiff's injuries and the cause of those injuries so long as they do not rely on information outside of the examination, diagnosis and treatment of the Plaintiff.

Further, some courts find that treating physicians who testify by using any specialized knowledge or training are technically experts for the purposes of expert witness disclosures under Rule 26(a)(2)(A), though not retained experts for which an expert report would be required under Rule 26(a)(2)(B). Fanning v. Target Corp., No. 05-CV-12 (PKL)(MHD), 2006 WL 298811, at *3 (S.D.N.Y. Feb. 6, 2006). Even in that case, however, the Court found that listing witnesses as fact witnesses in the Rule 26(a)(1)(A) initial disclosures was not prejudicial error. Id. (but see, Musser v. Gentiva Health Services, 356 F.3d 751, 756-58 (7th Cir. 2004) (holding that

parties must properly disclose physician experts even when they are not retained experts required to submit a report)). Of course, here all three physicians were listed on the Rule 26(a)(2)(A) expert disclosures making that issue moot.

B.  Dr. Kirkpatrick's Testimony Will Be Permitted

While some aspects of Dr. Kirkpatrick's testimony were addressed in the motion *in limine* briefing, other aspects were addressed in separate letter briefing.

There are two issues the parties raise:  (1) can Defendant prevent Plaintiff from taking Dr. Kirkpatrick's deposition; and (2) if Plaintiff is permitted to take Dr. Kirkpatrick's deposition, is Plaintiff required to issue a valid subpoena for Dr. Kirkpatrick's testimony.

First, Dr. Kirkpatrick can be deposed. The parties argue about whether Dr. Kirkpatrick is a fact witness or an expert witness (and if an expert witness, whose expert witness). Rule 30(a)(1) provides that, "A party may, by oral questions, depose any person . . ." (emphasis added). This broad rule is not limited for non-party witnesses, fact witnesses, or either party's retained or non-retained expert witnesses. Therefore it is not necessary for this Court to determine the precise status

of Dr. Kirkpatrick. No matter his status as a witness, he is a
person who can be deposed because of the breadth of Rule
30(a)(1).

Instead, the limitation enumerated in Rule 30 is that
"[t]he deponent's attendance may be compelled by subpoena under
Rule 45." Fed. R. Civ. P. 30(a)(1). If Plaintiff seeks to take
Dr. Kirkpatrick's deposition, Plaintiff is required to obtain a
subpoena. The subpoena must comply with the requirements of Rule
45(a)(1)(A-B). Further, Rule 45(a)(2) requires that the subpoena
"must issue from the court where the action is pending." Fed. R.
Civ. P. 45(a)(2). Therefore, the subpoena must issue from the
Southern District of New York (the District in which this action
is pending).

The parties disagree about the geographic reach of a
subpoena issued by this Court. Rule 45(c) provides the
geographic limitations on subpoena power. Under the Rule, a
subpoena may command a person to attend a deposition as long as
the deposition is located "within 100 miles of where the person
resides, is employed, or regularly transacts business in person.
Fed. R. Civ. P. 45(c)(1)(A). Since the proposed deposition is at
Dr. Kirkpatrick's office, it is well within the geographic reach

9

of a subpoena under Rule 45 issued by the Clerk of the Southern
District of New York.

As this Court ruled from the bench on April 8, 2016, the
deposition must take place during regular business hours.

### C.   Testimony about the Plaintiff's Subsequent Injuries Will Be Permitted

Plaintiff alleges that after the accident, which is the
subject of this litigation, Plaintiff subsequently fell and
fractured his hand. The issue in this motion is whether
Plaintiff's doctors can testify about his hand fracture and the
cause of his fall.

In New York, when a person is injured by the negligence of
another and that person is "involved in another accident because
of the injuries sustained in the first accident, the tortfeasor
in the first accident is also responsible for the subsequent
injuries." Daliendo v. Johnson, 147 A.D.2d 312, 318, 543
N.Y.S.2d 987 (2d Dep't. 1989). However, the injured plaintiff
must exercise "ordinary and reasonable diligence in the
treatment of his injuries" in order to recover for the damages

suffered as a result of the subsequent injury. Goldman v. State, 28 A.D.2d 782, 280 N.Y.S.2d 879 (3rd Dep't 1967).

The Court will allow the jury to consider the subsequent accident only if there was "sufficient evidence to entitle the jury to find that plaintiff's original injuries were the proximate cause of the subsequent injuries sustained." Creaser v. Smith Trucking Co., 2 N.Y.2d 177, 180, 139 N.E.2d 146 (1956). In Creaser, Plaintiff testified that the injuries he sustained in a subsequent fall were the result of his weakened ankle from the original car accident and there was medical testimony permitted about the cause of his injuries. Daliendo v. Johnson, 147 A.D.2d at 318-319.

Here, the Plaintiff and his doctors will be permitted to testify about the subsequent injury in order to determine if the original injury was the proximate cause of the subsequent injury. Id.

## 2.   Gross Wages

Defendant makes two arguments with respect to gross wages. First, Defendant argues that Plaintiff should be precluded from introducing any testimony regarding gross wages since FELA

11

limits damages to net wages after deductions. Second, Defendant argues that future wage losses should be excluded because Plaintiff's future wage losses are too speculative.

First, the parties both agree that net wages are the only appropriate measure of compensable damages. The remaining issue is whether Plaintiff is permitted to mention that gross wages are a necessary input for the appropriate calculation of net wages. Defendant argued that "the wage earner's income tax is a relevant factor in calculating the monetary loss suffered." Norfolk and W. Ry. Co. v. Liepelt, 444 U.S. 490, 493 (1980). However, "gross wages have to be established in order to calculate net wage loss, and jurors are capable of understanding this calculation." Cash v. Union Pac. R.R. Co., No. 08-CV-00060 (WRW), 2010 WL 330354, *2 (E.D. Ark. Jan. 20, 2010). Therefore, gross wages will only be permitted insofar as gross wages are a necessary input for calculating net wages.

Second, Defendant seeks to exclude future wage losses because in this case, Plaintiff has failed to provide sufficient support for it. Both parties agree that FELA claims can include jury awards for future lost earnings. Sinclair v. Long Island R.R., 985 F.2d 74, 78 (2d Cir. 1993). Those awards are calculated by taking the difference between what Plaintiff could

12

have earned without his injuries and what Plaintiff can now earn
with his disability. Id.

However, Defendant seeks to preclude future earnings beyond
the contract period without the support of an expert. Costa v.
Metro-North Commuter R.R., 03-CV-4408 (S.D.N.Y. June 30, 2004).
In that case, future earnings were permitted during the contract
period and the expert was presumably required to estimate any
future increases in contract wages.

Since Plaintiff has not designated an expert in contract
wages, Plaintiff will not be permitted to speculate about any
future increases to wages. However, Plaintiff can present
evidence concerning future wages using the calculation of
current contract wages less his earning capacity after his
injuries.

### 3.    **References to Financial Hardship**

This motion concerns whether the Plaintiff can make any
mention of financial hardship.

This question is an interpretation of Federal Rule of
Evidence 403, which asks whether the probative value of the

13

evidence "is substantially outweighed" by a danger of unfair prejudice. The Court will require a proffer at trial as to testimony concerning financial hardship to make its Rule 403 determination.

One example of financial hardship raised by the Defendant was evidence of pictures of the Plaintiff's place of residence. The significance of these pictures was to show the variance in the quality of the residence Plaintiff had previously lived in compared to the trailer in which he currently resides with his family. The prejudice fostered by these pictures outweighs their probative value under Rule 403.

## 4.     **References to Plaintiff's Family Members**

This motion asks the Court to exclude any mention of the Plaintiff's family, including that he is a father. It also seeks to prevent the Plaintiff's wife from testifying.

As with the previous section, the issue here is a question of whether certain testimony is unduly prejudicial under Federal Rule of Evidence 403. Here, the Plaintiff can mention that he is a father. While mentioning his children for the sole purpose of

14

enflaming the sympathy of the jury would be impermissible,
fatherhood is not one.

The Plaintiff's wife will be permitted to testify as to
physical differences in the Plaintiff before and after the
accident.

The parties agreed at oral argument that they will not
introduce any evidence about the Plaintiff's family members'
medical conditions.

## 5.    **References to Plaintiff as a Good or Safe Employee**

In this motion, Defendant moved to exclude any evidence
that the Plaintiff was a "good" or "safe" worker on relevance
grounds under Federal Rules of Evidence 401-403. The parties
agreed at oral argument that Plaintiff will not seek to admit
any such evidence unless the Defendant introduces evidence
calling into question whether the Plaintiff was a "good" or
"safe" worker. The parties' agreement at oral argument resolves
this motion.

15

**6.    Evidence of Safer Procedures or Methods**

Defendant asks this Court to exclude any evidence that the
railroad should have provided perfect working conditions.
Instead, Defendant asks that it be held to the standard of
exercising reasonable and ordinary care to provide a reasonably
safe work place. Brady v. Southern Ry. Co., 320 U.S. 476 (1943).

Plaintiff will not be permitted to introduce evidence that
the Defendant was required to or should have provided a work
environment that was any safer than that standard. However,
Plaintiff is permitted to introduce evidence that Defendant did
not exercise reasonable and ordinary care to provide a work
environment that was reasonably safe.

**7.    Evidence of Benefits Paid under the Railroad
Retirement System with Respect to Plaintiff's Mitigation of
Damages**

Defendant seeks to introduce evidence regarding benefits
paid under the railroad retirement system with respect to
Plaintiff's mitigation of damages or his financial means to
malinger because they are not collateral sources.

The collateral source rule is "an established exception to
the general rule that damages in a negligence action must be

16

compensatory, a wrongdoer is not permitted to reduce a plaintiff's recovery because of benefits which the latter may have received from another source." Cunningham v. Rederiet Vindeggen A/S, 333 F.2d 308, 316 (2d Cir.1964). Some of these sources can include health insurance, life insurance, pensions, and other benefits.

The general rule in the Second Circuit in FELA cases is that "evidence of payments made to plaintiff from collateral sources is not admissible." Santa Maria v. Metro-North Commuter R.R., 81 F.3d 265, 272-73 (2d Cir. 1996) (citing Eichel v. N.Y. Central R.R. Co., 375 U.S. 253, 255 (1963) (per curiam)).

The Second Circuit limits this holding by finding that "such evidence may be admissible if the plaintiff puts his financial status at issue." Id. at 273. The Supreme Court in Eichel held that "[i]nsofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension." Eichel, 375 U.S. at 255.

Defendant points to a First Circuit Court of Appeals case, McGrath v. Consolidated Rail Corp. for the proposition that the

17

United States Supreme Court in Eichel did not "establish[] a bright-line rule barring the admission of collateral source evidence on the issue of malingering." 136 F.3d 838, 841 (1st Cir. 1998). In McGrath, the Court read Eichel narrowly to allow collateral benefits for the purpose of showing the plaintiff's lack of motivation to return to work. Id.

However, the First Circuit's opinion in McGrath is the minority view and has not been adopted by the Second Circuit. Therefore, evidence of malingering through collateral sources will not be admissible. Steinherr v. CSX Transp., Inc., No. 10-CV-0891 (MAD), 2011 WL 6132293, at *3 (N.D.N.Y. Dec. 8, 2011) (rejecting McGrath and excluding evidence of collateral sources under FELA).

## 8. **Evidence of Railroad Retirement Benefits Are Admissible**

As discussed above, evidence of collateral sources is not admissible under Eichel. However, Defendant argues that Railroad Retirement Benefits ("RRB benefits") are not a collateral source because the Defendant contributed to this source of funds.

18

However, employers contribute to several collateral sources including medical costs and other insurance policies, as well as pensions, which are all considered collateral sources. See, Blake v. Delaware & H. Ry. Co., 484 F.2d 204, 207 (2d Cir. 1973) (finding an insurance policy for medical expenses is an excluded collateral source under FELA); Manes v. Metro-North Commuter R.R., 801 F.Supp. 954, 965-66 (D. Conn. 1992) (finding the same for medical expenses); Ebert v. City of New York, No. 04-CV-9971 (LMM), 2006 WL 3627103, at *3-4 (S.D.N.Y. June 26, 2006) (finding that pension benefits could not be used to offset an award under the collateral source rule).

Further, other District Courts in this Circuit have specifically found that RRB benefits are a collateral source and are not admissible in a FELA case. Steinherr v. CSX Transp., Inc., at *3. Therefore, RRB benefits will not be admissible as an offset under the collateral source rule.

## III. Conclusions

For the foregoing reasons, Defendant's motions *in limine* are granted in part and denied in part.

It is so ordered.

New York, NY
April /5—, 2016

_____
ROBERT W. SWEET
U.S.D.J.